IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PURESHIELD, INC. and ) <br> VIACLEAN TECHNOLOGIES, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> INHOLD, LLC and NOVALENT, LTD., ) <br> ) <br> Defendants. ) | 1:20-cv-1025 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs PureShield, Inc. ("PureShield") and ViaClean Technologies, LLC ("ViaClean") initiated this action on November 13, 2020, requesting a declaration that they have "all substantial rights" in a set of ten patents used in antimicrobial cleaning products. (ECF No. 1 ¶¶ 1, 2, 5.) Though they signed a contract with Defendants Inhold, LLC ("Inhold") and Novalent, Ltd. ("Novalent") in 2014 regarding the use and enforcement of at least some of the patents at issue, Plaintiffs allege that Defendants are now "actively undermining and contravening the very same rights they have conveyed" in the agreement. (*Id.* ¶¶ 5, 6.) In addition to requesting a declaratory judgment, Plaintiffs have asked the Court to award damages for multiple violations under North Carolina state law. (*Id.* at 35–36.) Now before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim. (ECF No. 21.) For the reasons detailed below, that motion is granted in part and denied in part.

## I. BACKGROUND

In January 2007, Joseph Raich and Joe Mason created a limited liability company named Inhold with each party possessing "equal ownership and management rights." (ECF No. 1 ¶ 15.) According to Plaintiffs, Inhold operated as a holding company for Novalent, an entity owned and operated by Mr. Mason.[1] (*Id.* ¶¶ 15, 16.) Shortly thereafter, Inhold acquired four patents that the parties refer to as the '869 patent, the '815 patent, the '587 patent, and the '172 patent (together, the "Inhold Patents"). (*Id.* ¶ 17.) One year later, in 2008, Mr. Raich formed his own company known as PureShield, which is now a wholly owned subsidiary of Plaintiff ViaClean. (*Id.* ¶ 19.)

Following a lengthy dispute between Mr. Raich and Mr. Mason over how best to utilize the patents they co-owned, Mr. Mason sought in 2014 to buy out Mr. Raich's ownership stake in Inhold on behalf of and through Novalent. (*Id.* ¶ 17, 20.) To that end, the parties entered an "Amended and Restated License Agreement" (the "License Agreement") in October of that year. (ECF No. 1-11.) According to Plaintiffs, Mr. Raich agreed to sell his stake on the condition that Inhold would provide PureShield with "full and unfettered rights to practice, license, and enforce" the then-existing Inhold Patents as well as subsequent patents filed by the "Licensor" containing "substantially the same subject matter." (ECF No. 1 ¶¶ 20, 23.)

The legal consequences of the License Agreement—including which patents are subject to the agreement—form the crux of this dispute. In sum, Plaintiffs allege that the License Agreement has granted them "all substantial rights tantamount to an assignment" in

---

[1] Novalent was previously named Indusco, Ltd. (ECF No. 1 ¶ 15.) For the sake of clarity, the Court will refer to this entity by its current name only.

both the four Inhold Patents as well as six additional patents filed by Novalent in subsequent years. (*Id.* ¶ 28.)

To reach this conclusion, Plaintiffs first argue that Novalent is a "successor" to Inhold and therefore is "equally bound" by the License Agreement's provisions. (*Id.* ¶ 29 (citing ECF No. 1-11 at 8 ("This Agreement shall be binding upon and inure to the benefit of [Inhold], its legal representatives, successors and assigns.")).) Plaintiffs alternatively contend that Inhold and Novalent should be considered "alter egos" under North Carolina law given that they "have been operating from the same offices, have the same officers and management, and effectively operate as a single enterprise." (*Id.* ¶ 30.) Plaintiffs further point out that Novalent is expressly named as a party in the License Agreement. (*Id.*) Therefore, Plaintiffs argue, when Mr. Mason signed the License Agreement, he signed it "on behalf of both Inhold and [Novalent]." (*Id.*)

Building on this allegation that Novalent is thus a party to the License Agreement, Plaintiffs next allege that the intellectual property covered by the contract includes any U.S. patents subsequently filed by Novalent "for substantially the same subject matter disclosed" in the originally four Inhold Patents. (*Id.* ¶ 31 (quoting ECF No. 1-11 at 3).) Plaintiffs contend that this language covers six patents[2] that Novalent filed in the months following the execution of the License Agreement, arguing that a person "skilled in the art would understand [that] the subject matters" of these patents are similar enough to the original four Inhold Patents that they fall within the ambit of the agreement. (*Id.* ¶¶ 32, 43.)

---

[2] The parties refer to these patents as the '384 patent, the '120 patent, the '080 patent, the '020 patent, the '553 patent, and the '664 patent. (ECF No. 1 ¶ 32.)

Plaintiffs next allege that their rights in these patents have been repeatedly undermined and obstructed by Defendants in multiple ways. (*Id.* ¶ 47.) First, they argue that Defendants actively concealed the filing of six patent applications covered by the agreement by failing to inform Plaintiffs of the filings, omitting references to the original Inhold Patents in their application disclosures, and naming Novalent—instead of Inhold—as the applicant. (*Id.* ¶ 48.) Plaintiffs contend that "this strategy was specifically crafted in an attempt to illegally circumvent the License Agreement." (*Id.*)

Next, Plaintiffs contend that "Defendants began a campaign of undermining Plaintiffs' exclusive rights" to the patents by licensing them to third parties "in direct contravention of Plaintiffs' exclusive rights." (*Id.* ¶ 49.) Plaintiffs argue that the rights established in the License Agreement made them the "effective patentee" and that further licensing by Defendants infringed upon Plaintiffs' status. (*Id.* ¶ 50.)

Plaintiffs next contend that Defendants have asserted in public court filings that Plaintiffs have "<u>no rights</u> to practice, license, or enforce" the patents and that they have additionally communicated the same allegations to third parties in the industry as well as current and potential customers. (*Id.* ¶¶ 53–54.) Finally, Plaintiffs argue that Defendants have been "collaborating with infringing competitors in direct violation of the License Agreement and in derogation of Plaintiffs' rights" in the ten patents at issue. (*Id.* ¶ 55.)

In addition to asking for a declaratory judgment that they have "all substantial rights in and to the" ten patents, Plaintiffs also ask the Court to find that Defendants are liable under North Carolina law for breach of contract, fraud, unfair competition, and tortious interference.

4

(*Id.* at 35–36.)  Defendants now move to dismiss the Complaint in its entirety for failure to state a claim.  (ECF No. 21.)

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In assessing a claim's plausibility, a court must draw all reasonable inferences in the plaintiff's favor.  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013).

A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, "mere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013), and a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Vitol*, 708 F.3d at 548 (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)).  A complaint may fail to state a claim upon which relief can be granted in two ways:  first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d

448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille*, 716 F.3d at 350.

## III. DISCUSSION

### A. *Declaratory Judgment*

Defendants first move the Court to dismiss Plaintiffs' request for a declaratory judgment.[3] (ECF No. 21 at 2.) Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). These declarations "have the force and effect of a final judgment or decree." *Id.*

A motion to dismiss under Rule 12(b)(6) is "seldom an appropriate pleading in actions for declaratory judgments, and . . . is allowed only when the record clearly shows that there is no basis for declaratory relief [such] as when the complaint does not allege an actual, genuine existing controversy." *N.C. Consumers Power, Inc. v. Duke Power Co.*, 206 S.E.2d 178, 182 (N.C. 1974) (citations omitted). Accordingly, to survive a motion to dismiss

> [i]t is required only that the plaintiff shall allege in his complaint . . . that a real controversy, arising out of their opposing contentions as to their respective legal rights and liabilities under a . . . contract in writing . . . exists between or among the parties, and that the relief prayed for will make certain that which is uncertain and secure that which is insecure.

*Id.* at 188 (quoting *Carolina Power & Light Co. v. Iseley*, 167 S.E. 56, 61 (N.C. 1933)).

---

[3] Defendants' motion also specifically asks the Court to "enter a declaration that Plaintiffs *do not* have 'all substantial rights'" to the patents at issue, though they state that they do so because courts generally construe "a motion to dismiss a claim for declaratory relief as a cross-motion for a declaration in the defendant's favor." (ECF No. 21 at 2 (quoting *Rowan Cnty., N.C. v. Fed. Nat'l Mortgage Ass'n*, No. 1:12CV859, 2013 WL 5213719, at *3 (M.D.N.C. Sept. 16, 2013)).)

6

It is uncontested that this dispute is over a written contract between the parties and that a declaratory judgment would clarify the rights among them. (*See* ECF Nos. 1 ¶¶ 5, 6; 22 at 1–2.) Defendants nevertheless contend that Plaintiffs have not met their burden to show that there is an actual, genuine existing controversy.

Here, Plaintiffs allege that the License Agreement gives them "all substantial rights" in the patents at issue "tantamount to an assignment under United States patent law." (ECF No. 1 ¶ 61.) According to Plaintiffs, this assertion is based on language in the agreement giving PureShield "an unfettered, worldwide right to practice, license, and enforce" the ten patents at issue. (*Id.* ¶ 28.) Defendants disagree and counter that the plain language of the License Agreement shows that Plaintiffs' rights have never been so broad and contend that Plaintiffs instead hold "at most, a non-exclusive license to only the Inhold Patents." (ECF No. 22 at 7 (internal quotation marks and emphases omitted) (citing ECF No. 1-11).) Given the use of the term "non-exclusive" in the contract, they urge the Court to find that there is no genuine issue outstanding. (*Id.* at 6–7)

Though the Court makes no judgment at this stage as to whether Plaintiffs will ultimately be successful, it finds that they have identified a substantial controversy between the parties and that their claim to the rights of practicing, licensing, and enforcing the patents is grounded in the language of the License Agreement and of sufficient immediacy to warrant resolution. Moreover, to the extent this contract has language suggesting that it is "non-exclusive," there is still an outstanding question as to what such a term means within the context of the entire agreement. In other words, it is not evident that the language in the agreement precludes a finding that Plaintiffs are entitled to declaratory relief and the Court

7

finds that Plaintiffs have stated sufficient facts to raise a claim upon which relief may be granted. Accordingly, the Court denies Defendants' motion to dismiss the request for a declaratory judgment.[4]

B. *Breach of Contract*

To survive a motion to dismiss a breach of contract claim under North Carolina law, a Plaintiff "must allege [1] the existence of a contract between plaintiff and defendant, [2] the specific provisions breached, [3] the facts constituting the breach, and [4] the amount of damages resulting to plaintiff from such breach." *Cantrell v. Woodhill Enterprises, Inc.*, 160 S.E.2d 476, 481 (N.C. 1968) (emphasis omitted). Defendants do not contest the existence of a contract between the parties, nor do they not contend that Plaintiffs have failed to sufficiently plead damages. Rather, they argue that Plaintiffs have failed to identify a specific term of the License Agreement which Defendants have violated. (ECF No. 22 at 16.)

In their Complaint, Plaintiffs allege that Defendants have breached subsection VI(i) of the License Agreement. (ECF No. 1 ¶ 78.) This provision expressly states that the License Agreement shall not be construed (1) as a warranty as to the scope of the patents, (2) an obligation for the Licensor to file or maintain patents, or (3) a requirement that Defendants must prosecute suits for infringement. (ECF No. 1-11 at 9.) That said, it does provide that PureShield and its assigns and sublicensees "may prosecute and bring any and all actions for infringement" against third parties. (*Id.*) Further,

---

[4] In arguing for a dismissal of the declaratory judgment count, Defendants also contend that "Plaintiffs have no rights to" the six patents filed by Novalent. (ECF No. 22 at 12.) However, because the Court finds that Plaintiffs have sufficiently alleged a controversy with regards to the Inhold Patents to survive a motion to dismiss, it declines at this time to further evaluate Plaintiffs' rights in the Novalent patents.

8

> (... if requested by PureShield, Licensor shall reasonably cooperate with PureShield with respect to any such action, at the cost of PureShield) and in the event PureShield or its assigns or sublicensees is unable to prosecute or bring any action for infringement of any of the LICENSED INTELLECTUAL PROPERTY because such party lacks standing, Licensor shall, at PureShield's direction and expense, bring such action on behalf of PureShield or its assign or sublicensee.

(*Id.*)

Plaintiffs contend that Defendants have breached this provision in four ways. First, they contend that Defendants have "consistently engaged in concerted efforts to undermine and vitiate Plaintiffs' rights" in the patents. (ECF No. 1 ¶ 72.) Second, they contend that "Defendants have attempted to either license the patents to third parties or authorize third parties" to use the same patents in violation of Plaintiffs' rights. (*Id.* ¶ 73.) Third, they allege that Defendants have "further sought to vitiate Plaintiffs' rights under the License Agreement by asserting in public court filings" that Plaintiffs have no substantial rights. (*Id.* ¶ 74.) Fourth, and finally, they contend that Plaintiffs have "been cooperating with infringing competitors in violation of the License Agreement." (*Id.* ¶ 75.) They argue that these activities constitute a material breach of Defendants' "express obligations to cooperate *with PureShield*—or its assigns and sublicensees—in any infringement action brought to enforce the PureShield Patents." (*Id.* ¶ 78 (citing 1-11 at 9).)

Yet the provision that Plaintiffs cite does not bar any of the conduct that Plaintiffs have alleged. The subsection requires that the Licensor reasonably cooperate with PureShield only "if requested by PureShield." Plaintiffs have not alleged that they have requested such cooperation at any time. To read this obligation as implied at all times would be to render such a phrase surplusage. Therefore, even if Defendants have been working with potential

9

infringers, subsection VI(i) by its plain language does not stop them from doing so absent a request for assistance by Plaintiffs.

Defendants' second obligation under this subsection is also subject to a preceding condition. According to subsection VI(i), the Licensor must bring an action for copyright infringement on behalf of PureShield only "in the event PureShield or its assigns or sublicensees is unable to prosecute or bring any action for infringement . . . because such party lacks standing." (ECF No. 1-11 at 9.) Here, Plaintiffs have not alleged that they lack standing for such an action and therefore have not invoked such an obligation.

To the extent that Plaintiffs suggest the Defendants have nevertheless violated the spirit of the contract by "actively working with infringers," (*see* ECF No. 24 at 30), Defendants are correct to point out that such arguments are insufficient under North Carolina law when a plaintiff fails to allege a specific provision that has been breached, (ECF No. 25 at 10 (citing *Polygenex Int'l, Inc. v. Polyzen, Inc.*, 515 S.E.2d 457, 462 (N.C. Ct. App. 1999)).) Therefore, the Court finds that Plaintiffs have not pleaded sufficient facts to plausibly raise a claim upon which relief may be granted. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' breach of contract claim.

C.   *Fraud*

There are two types of fraud under North Carolina law—actual and constructive. The first, actual fraud, "has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition." *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974). That said, the "essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated

to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Id.* (citations omitted).

Here, Plaintiffs allege that Defendants entered into a contract to acquire an ownership stake in Inhold "in return for and subject to PureShield acquiring all substantial rights" to the patents at issue. (ECF No. 1 ¶ 82.) Plaintiffs contend that they "relied on these representations to consummate the transaction," only to have Defendants "turn around and wage a campaign against PureShield's intended and conveyed rights under the License Agreement." (*Id.* ¶ 85.) Plaintiffs argue they did this by filing patents secretively through Novalent and additionally by colluding with third-party patent infringers against Plaintiffs' interests. (*Id.* ¶ 86.)

While the Court makes no judgment at this stage on the extent of the rights conveyed in the License Agreement, Plaintiffs' allegation that Defendants made representations inducing them to sign a contract with the intent to undermine that understanding is sufficient to withstand a motion to dismiss. It also satisfies the heightened pleading requirements for fraud under Rule 9 mandating that plaintiffs specifically allege "the time, place, and contents of the false representations"—the signing of the contract—"as well as the identity of the person making the misrepresentation"—Novalent's contract signatory, Joe Mason. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (internal citation and quotation marks omitted).

Plaintiffs' allegations with regards to the second type of fraud, constructive fraud, are less availing. Under North Carolina law, "the key to a constructive fraud claim is a fiduciary relationship between plaintiff and defendant." *Dreamstreet Invs., Inc. v. Midcountry Bank*, 842 F.3d 825, 831 (4th Cir. 2016). Further, "[a]s a matter of law, there can be no fiduciary

11

relationship between 'parties in equal bargaining positions dealing at arm's length, even though they are mutually interdependent businesses.'" *Id.* (quoting *Strickland v. Lawrence*, 627 S.E.2d 301, 306 (N.C. Ct. App. 2006)).

Plaintiffs contend that they "have sufficiently pleaded 'special circumstances' in that Inhold indeed 'held all cards' to the intellectual property at the time the parties were negotiating the transaction." (ECF No. 24 at 31.) However, the undisputed facts of this case demonstrate that Mr. Mason and Mr. Raich were equal partners in Inhold before they decided to part ways, (ECF No. 1 ¶ 15), and there are no facts alleged that suggest the contract was not negotiated at arm's length. Accordingly, the Court finds that Plaintiffs have failed to allege sufficient facts to support a case for constructive fraud under North Carolina law.

### D. *Unfair Competition*

Under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). To establish a prima facie claim under the UDTPA, a plaintiff must demonstrate that: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) (citation omitted). An "unfair" practice is one that is "unethical or unscrupulous," and an act is deceptive "if it has a tendency to deceive." *Id.* (citing *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). The UDTPA defines "commerce" broadly as "all business activities, however denominated . . . ." N.C. Gen. Stat. § 75-1.1(b).

Plaintiffs allege that Defendants have engaged in activity that violates the act in that they have actively collaborated with third parties to infringe upon Plaintiffs' patents in derogation of Plaintiffs' rights under the License Agreement. (ECF No. 1 ¶¶ 90–93.) Defendants do not dispute that these allegations were made. Rather, they argue that Plaintiffs' claim must fail because it "presupposes that Plaintiffs' interpretation of the License Agreement is correct." (ECF No. 22 at 20.) When responding to a motion to dismiss, however, a court must draw all reasonable inferences in the plaintiff's favor. Accordingly, the Court declines to dismiss Plaintiffs' claim under the UDTPA.

### E. *Tortious Interference*

Under North Carolina law, a plaintiff may bring a claim for tortious interference on an existing contract as well as on a prospective one. In order to state such a claim with regards to an existing contract, one must demonstrate that:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988) (citation omitted). To state a claim for tortious interference with prospective economic advantage, a plaintiff must "allege facts [showing] that the defendants acted without justification in inducing a third party to refrain from entering into a contract with them[,] which contract would have ensued but for the interference." *Walker v. Sloan*, 529 S.E.2d 236, 242 (N.C. Ct. App. 2000) (citation omitted). The activity must be undertaken "not in the legitimate exercise of the defendant's own rights, but with design to injure the plaintiff, or gaining some advantage at his expense." *Gupton v.*

13

*Son-Lan Dev. Co.*, 695 S.E.2d 763, 770 (N.C. Ct. App. 2010) (quoting *Coleman v. Whisnant*, 35 S.E.2d 647, 656 (N.C. 1945)).

Plaintiffs allege that, upon information and belief, Defendants "have tortiously interfered and continue to tortiously interfere with Plaintiffs' existing and prospective business relations in violation of North Carolina's tortious interference common law." (ECF No. 1 ¶ 98.) Moreover, Plaintiffs contend that Defendants have been representing to third parties that "Plaintiffs purportedly have no rights to practice, license, or enforce" the patents at issue and have "intentionally induced third parties not to maintain or enter into contractual relations with Plaintiffs." (ECF No. 1 ¶ 99.)

With regards to tortious interference with an existing contract, Defendants are correct to point out that the Complaint "fails to allege any particular existing contract, that there were ongoing contractual obligations between Plaintiffs and any third party, or that Defendants had knowledge of such contract." (ECF No. 22 at 22.) Such omissions are fatal to Plaintiffs' claim. Though Plaintiffs argue that they have identified or indicated some existing customers, this falls short of alleging a contractual relationship. *See Superior Performers, Inc. v. Phelps*, 154 F. Supp. 3d 237, 249–50 (M.D.N.C. 2016) (dismissing a claim when it claimed interference with customer relationships and not valid contracts).

Plaintiffs' claim for tortious interference of prospective business likewise fails. Plaintiffs have offered only conclusory statements that Defendants have interfered with potential contracts. Further, they do not allege any facts that would support a finding that a contract with any third party would have ensued but for the interference of Defendants.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' tortious interference of prospective business claim.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, (ECF No. 21), is GRANTED as to the following claims: breach of contract (Count 2); constructive fraud (Count 3); and tortious interference (Count 5).

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss, (ECF No. 21), is DENIED as to Plaintiff's request for a declaratory judgement (Count 1); actual fraud (Count 3); and unfair competition under the UDTPA (Count 4).

This, the 16th day of August 2021.

/s/ Loretta C. Biggs
United States District Judge